OYP



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Walter C. Woodward, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-1772
Re: Construction of Senate Bill 135, enacted
by the Forty-sixth Legislature, touching
Article 4794, Vernon's Annotated Civil
Statutes.

We have carefully considered your letter of recent
date, requesting the opinion of this department on the ques-
tion submitted by you in the following language:

"Was Article 4794 repealed by any provision of S.
B. 135, and is that part of Article 4794 requiring the
'red letter' clause in force and applicable to those
companies now transacting business in this state and
which were transacting business in this state on the
effective date of Senate Bill 871"

Section 1 of Senate Bill 135, Acts 1939, Forty-sixth
Legislature, page 401 (Art. 5068-1, Vernon's Annotated Civil
Statutes), reads as follows:

"Scope of Act. This Act shall apply to and em-
brace all insurance companies and associations,
whether incorporated or not, which issue policies or
certificates of insurance on the lives of persons,
or provide health and accident benefits, upon the so-
called mutual assessment plan, or whose funds are de-
rived from the assessments upon its policyholders or
members, and shall, in fact, apply to all life, health
and accident companies or associations which do not
come within the provisions of Chapter 3, Chapter 5,
Chapter 7, Chapter 8, Chapter 9, Chapter 18, Chapter
19, or Chapter 20, Title 78 of the Revised Civil
Statutes of Texas. This Act shall include local mu-
tual aid associations; statewide life, or life, health
and accident associations; mutual assessment life,

Hon. Walter C. Woodward, Chairman, page 2

health and accident associations; burial associations;
and similar concerns, by whatsoever name or class
designated, whether specifically named herein or not."

The Act, which contains 36 sections, governs and regu-
lates, among other companies and associations, those created
under Chapter 6, Title 78, Revised Civil Statutes of Texas,
1925, (Articles 4784-4799, inc., Vernon's Annotated Civil
Statutes). This chapter, among others, was repealed by Sec-
tion 18 of Senate Bill 57 (Acts 1929, Forty-first Legislature,
First Called Session, page 90, Chapter 40), the repealing
statute, however, containing the following provision:

"* * * Provided that such repeal and the provi-
sions of this Act shall not apply to or affect any
company or association of this state now doing busi-
ness under the laws repealed and they shall continue
to be governed by the regulatory provisions of such
laws. * * * "

Accordingly, such companies or associations then in ex-
istence continued to be governed and regulated by such statutes
under which they were organized, including Article 4794, here
under consideration, and continue to be so regulated except
as, and if, such statutes are repealed by Senate Bill 135,

Section 35 of Senate Bill 135 provides:

"All laws or parts of laws in conflict with the
provisions of this Act are hereby expressly repealed
to the extent of such conflict."

In the light of this general repealing clause, and as
a background to an analysis of the provisions of Senate Bill
135, as relating to the prior statutory enactment under con-
sideration, we quote from the case of JOHNSON v. FERGUSON, 55
S. W. (2d) at page 157 as follows:

"In speaking upon the subject of repeal by impli-
cation where the later enactment contained the general
provision repealing all laws and parts of laws in con-
flict therewith, Chief Justice Gaines, writing for the
Supreme Court, said: 'It is clear that there is no
express repeal; that is, the provision in question
is not directly pointed out as expressly repealed.
But since the effect of a general provision repealing
conflicting laws evinces that the Legislature had in
mind that something was to be repealed, the ''courts
will be less inclined against recognizing repugnancy

Hon. Walter C. Woodward, Chairman, page 3

in applying such statutes, while, in dealing with those of the other class, they will, as principle and authority requires, be astute to find some reasonable mode of reconciling them with prior statutes so as to avoid a repeal by implication.'' Sutherland Stat. Const. p. 199a. But even with such a provision repealing all conflicting laws, the courts must find a repugnancy between the old provision and the new before they can find that the latter repeals the former.' GADDES v. TERRELL, 101 Tex. 574, 110 S. W. 429."

The "red letter" provision of Article 4794 reads:

"Each certificate of membership, policy or other contract of insurance issued by such company shall bear on its face in red letters the following words: 'The payment of the benefit herein provided for is conditioned upon its being collected by this company from assessments and other sources as provided in its by-laws' * * * "

This statute was obviously enacted for the purpose of informing the insuring public of the type of insurance purchased and of the condition upon which payment of the benefit provided for in the certificate would be made to the beneficiary. In other words, this requirement contemplated that the method of paying each claim, as it arose, would be by an assessment-as-needed, the amount payable not being measured by the maximum benefits of the certificate, or by any minimum set by law, but by the amount realized by the assessment only. Hence the notice of such to the insured in an unmistakable manner was provided for by the Legislature in Article 4794.

The underlying purpose of Senate Bill 135, on the other hand, is expressed clearly in various sections of the Bill as follows:

"Sec. 13. Payment of Claims. It is the primary purpose of this Act to secure to the members of the association and their beneficiaries the full and prompt payment of all claims according to the maximum benefit provided in their certificates * * * " (Underscoring ours).

"Sec. 11. Assessments. Each association shall levy regular and periodical assessments by whatever name they may be called. These assessments must be in such amounts and at such proper intervals as will meet the

Hon. Walter C. Woodward, Chairman, page 4

reasonable operating expenses of the association, <u>and pay in full the claims arising under its certificates. * * * "</u> (Underscoring ours).

"Sec. 9. Policies or Certificates. Every policy or certificate of insurance issued by an association shall state definitely on the front page the amount of death benefits to be paid * * * "

Accordingly, the Act contains numerous regulatory provisions whereby the payment of the maximum benefit of the certificates will be assured in advance, rather than payment based upon the conditional method of assessments-as-needed contemplated by Article 4794. Section 11 thereof provides:

"Assessments. Each association shall levy regular and periodical assessments by whatever name they may be called. These assessments must be in such amounts and at such proper intervals as will meet the reasonable operating expenses of the association, and pay in full the claims arising under its certificates. When or if in the course of operation it shall be apparent that the claims cannot be met in full from current assessments and funds on hand, the amount must be increased until they are adequate to meet such claims, and the Board shall so order.

"When any association shall refuse to comply with the Board's recommendations or requirements respecting rates of assessments, it shall be treated as insolvent, and shall be dealt with as is hereinafter provided.

"Each association operating under the provisions of this Act shall file its rate schedules with the Board of Insurance Commissioners."

Section 13 reads, in part, as follows:

"Any association which shall become unable to pay its valid claims <u>in full</u> within sixty (60) days after due proofs are received, shall for the purpose of this Act be regarded as insolvent, and dealt with as is more fully provided hereinafter." (Underscoring ours).

Henceforth, therefore, the companies and associations regulated by Senate Bill 135, which, of course, includes chapter 6 companies, must levy regular and periodical assessments, or charge such rates, as will be sufficient to pay in full the

Hon. Walter C. Woodward, Chairman, page 5

maximum benefits of the certificate issued by them. They may not, except in the particulars as set out, and as regulated by, Section 15 of the Act, operate on the assessment-as-needed or post mortem plan. The Board of Insurance Commissioners is expressly given the power to compel, and placed under the duty of compelling, the companies and associations created under Chapter 6, Title 78, Revised Civil Statutes, 1925, to operate in this manner, rather than upon the conditional assessments-as-needed plan contemplated by Article 4794 of such chapter.

Furthermore, upon failure of the associations to comply with the orders of the Board of Insurance Commissioners in this respect, they are subject to the penalty of being treated as insolvent, whereby the appointment of a conservator, or statutory receiver (provided for in Sec. 19 of the Act), would be authorized, and such associations thereafter operated, or liquidated, by such conservator.

In addition to this is the further safeguard provided for in Section 6 of the Act, which reads, in part:

"Deposits. Each association, not already required by existing laws to do so, shall place with the State Treasurer through the Board of Insurance Commissioners a deposit equal to the largest risk assumed on any one life or person, which may be in cash or in convertible securities subject to approval by the Board. Such deposit shall be liable for the payment of all judgments against the association, and subject to garnishment after final judgments against the association. When such deposit becomes impounded or depleted it shall at once be replenished by the association, and if not replenished immediately on demand by the Board, the association may be regarded as insolvent and dealt with as hereinafter provided. * * * "

It is further significant that Senate Bill 135 contains the following provisions regulating the contents of the certificates issued by the associations. Section 9 of the Act reads, in part, as follows:

"Policies or Certificates. Every policy or certificate of insurance issued by an association shall state definitely on the front page the amount of death benefit to be paid, and the circumstances or conditions under which it shall be paid shall be plainly stated in the policy. Every health, accident or other bene-

Hon. Walter C. Woodward, Chairman, page 6

fit shall be plainly stated in the policy, and the terms and conditions under which they shall be paid shall be stated plainly in the policy.

" * * *

"All conditions of the certificate must be stated thereon, * * * No certificate issued by such association, nor any application for the certificate shall contain language or be in such form as to mislead the applicant or the policyholder as to the type of insurance afforded.

" * * *

"Every certificate issued must be approved by the Board as to form and language before it is used by an association. It is not mandatory that these forms be uniform for all associations, but the Board is directed to bring about as great uniformity as is feasible as early as practicable by cooperation with the several associations. All certificate forms hereafter used must be in accord with the provisions of this Act and with all other laws regulating such associations as are embraced in this Act. * * * "

We believe the conclusion is inescapable that Senate Bill 135, a comprehensive Act covering a field of legislation, was enacted by the Legislature to accomplish the payment in full of all claims, according to the maximum benefits provided for in the certificate issued, by Chapter 6 companies, superseding the method of the payment of such claims, as contemplated by Chapter 6, conditioned upon, and limited by, the amount thereof collected from assessments-as-needed. And furthermore, that a compliance with Senate Bill 135 as to the contents of certificates will necessarily result in the insuring public and the prospective certificate holders or actual certificate holders being fully apprised of the nature of the insurance they are purchasing or have purchased.

The foregoing considerations resolve the question at hand in the light of well settled principles of statutory construction. As a full statement of the principles invoked, we quote as follows from the case of FIRST NATIONAL BANK vs. LEE COUNTY COTTON OIL CO., 274 S. W. at pp 129 and 130.

"In construing an act of the Legislature, the intention of the lawmaking power must govern as discovered

Hon. Walter C. Woodward, Chairman, page 7

by the wording of the act itself, together with the purpose sought to be attained by the enactment of the law. If this intention is plainly evidenced according to these rules, then it is the duty of the court to uphold the intention and construe the law in accordance therewith. Inasmuch as the question of repeal is always one of relative intent, an express declaration that a particular statute is repealed will not be given effect, where it is apparent that the Legislature did not so intend.

"'Where an act is passed covering the whole of a particular subject or field of legislation, it is customary to insert a general clause repealing ''all acts or parts of acts inconsistent therewith,'' and such a clause is effective in repealing inconsistent enactments, in the absence of any constitutional prohibition against such method of repeal; but the repeal extends only to those acts on the same subject, or parts of such acts, clearly inconsistent and irreconcilable with the provisions of the repealing act, and only to the extent of the conflicting provisions. A statute is repealed by implication whenever it becomes apparent from subsequent legislation that the Legislature does not intend the earlier act to remain in force. * * * Though repeals by implication are not favored, it necessarily results in any case of repugnancy or inconsistency between two successive statutes, or in any case where the intention of the Legislature is manifest that a later statute should supersede an earlier one.' American & English Encyclopedia of Law, Vol. 26, p. 717.

"This doctrine is approved in the following cases: Berry V. State, 69 Tex. Cr. R. 602, 156 S. W. 635; St. Louis S. W. Ry. Co. v. Kay et al, 85 Tex. 558, 22 S. W. 665; Ex parte Coombs, 38 Tex. Cr. R. 656, 44 S. W. 854; Dickinson v. State, 38 Tex. Cr. R. 479, 41 S. W. 759, 43 S. W. 520; Ex parte Valasquez, 26 Tex. 179; Cain v. State, 20 Tex. 364; Carolan v. McDonald, 15 Tex. 329; Rogers v. Watrous, 8 Tex. 65, 58 Am. Dec. 100. In the case of St. Louis S. W. Ry. Co. vs. Kay et al., Justice Gaines, speaking for the Supreme Court of Texas, in discussing a similar question, uses this language:

"'If Article 4227, as amended, repeals article 279, it is a repeal by implication. Such repeals

are not favored, and unless there be a re-
pugnancy or inconsistency between two statutes
the general rule is that the latter will not
repeal the former in the absence of express words
to that effect. But the question of repeal, like
every other question arising upon the construc-
tion of a statute, must be solved by determining
as near as may be the intent of the Legislature' -
citing Rogers v. Watrous, 8 Tex. 65; Ex parte
Velasquez, 26 Tex. 178; Cain v. State, 20 Tex. 355.

"He continues in the same case:

"'In Rogers v. Watrous (8 Tex. 65, 58 Am. Dec.
100), supra, Judge Wheeler says: ''A subsequent
statute, revising in the subject-matter of a form-
er one, and evidently intended as a substitute
for it, although it contains no express words
to that effect, must operate to repeal the
former to the extent to which its provisions are
revised and supplied. So though a subsequent
statute be not repugnant in its provisions to a
former one, yet if it was clearly intended to pre-
scribe the only rules which should govern, it
repeals the prior statute.''

"The general rule, enunciated above by the American
& English Encyc. of Law, supra, and approved by the
Supreme Court of this state by Judge Wheeler, which
was followed by Judge Gaines, as above stated, is
also enunciated in Chiles v. State, 1 Tex. App. 32,
holding the act prohibiting tenpin alleys to be re-
pealed by a later one providing for licensing them,
and in Dickinson v. State, 38 Tex. Cr. R. 479, 41 S.
W. 759, 43 S. W. 520, holding that the game law is im-
pliedly repealed by a later statute, and in Tunstall
v. Wortley, 84 Tex. 431, holding an act concerning
churches is repealed by a law concerning corporations.
We have been unable to find any authority bearing
directly on the subject which holds to the contrary.

"In the case of State v. Houston Oil Com. of Texas
(Tex. Civ. App.) 194 S. W. 452, Chief Justice Key, in
discussing a similar question, says:

"'The rule is well settled that, when a subse-
quent statute shows by its context that it was
intended to embrace all the law upon the subject
dealt with, such statute will, by implication,

Hon. Walter C. Woodward, Chairman, page 9

        repeal all former laws relating to the same sub-
ject. The correctness of that rule is not con-
troverted, and it is unnecessary to cite author-
ities in support of it.'"

It is therefore our considered opinion that Senate Bill
155 repeals Chapter 6, Title 78, Revised Civil Statutes of Texas,
and specifically the red letter provision contained in Article
4794 thereof.

It follows, and you are respectfully advised, that the
question submitted by you should be answered in the affirmative;
namely, that that part of Article 4794, requiring the "red letter"
clause in certificates of membership, is no longer in force
and applicable to those insurance companies originally organized
under the authority of Chapter 6, Title 78, Revised Civil Stat-
utes of Texas.

This opinion is not to be construed as passing upon the
constitutionality of Senate Bill 155, or of any of its provi-
sions.

Trusting that we have fully answered your inquiry, we
remain

                Very truly yours

           ATTORNEY GENERAL OF TEXAS

        By _Zollie C. Steakley_
           Zollie C. Steakley
                Assistant

ZCS:ob

APPROVED FEB 24, 1940

_Gerald C. Mann_
ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE